### COMMISSIONER OF INTERNAL REVENUE v. PURDY.
#### No. 3406.

Circuit Court of Appeals, First Circuit.
March 2, 1939.

profit to be derived from selling them at a price in excess of their cost. He traded on margin, and his broker withheld delivery of sufficient securities to guarantee his account, turning over surplus securities to the respondent in the form of "street" certificates. The General Electric stock had been acquired by the respondent as a gift from his mother in 1920. At that time, conforming to his mother's request, he promised that he would not dispose of this stock during her lifetime. She died in 1931. Thereafter, he held his General Electric stock, and stocks and bonds received from his mother's estate, like other stocks and bonds which he owned; that he held them not as an ordinary investor, but primarily for sale in the course of his business on the profit he hoped to make by sales at prices in excess of their cost.

The respondent engaged in numerous sales and purchases, and his volume of trading amounted to approximately $425,000 during the year on capital of about $130,000. He sustained a loss of $7,109.67 during the year on securities that had been held less than two years. He realized a profit of $14,233.68 from the sale of General Electric stock which had been held for more than two years. The Commissioner determined a deficiency of $1,094.41 in the 1932 tax, holding that the gain from the General Electric stock was a capital net gain, and that the loss on other securities, which the respondent had held for less than two years, was not deductible from his return because "there was no gain from other than capital assets to offset it."

The Board of Tax Appeals reversed the Commissioner's determination, and decided that the General Electric stock was not a capital asset, because by the plain language of the Act it was one of the kinds of property expressly excluded from the definition of "capital assets."

Section 101(c) (8) of the Revenue Act of 1932, 47 Stat. 169, 191, c. 209, 26 U.S.C.A. § 101 note, states that:

" 'Capital assets' means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include * * * property held by the taxpayer primarily for sale in the course of his trade or business."

None of the assignments of error has been argued and we regard them as waived. The material finding in the case is that the taxpayer held the General Elec-

Loring W. Post, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

G. K. Richardson, of Boston, Mass. (Richardson, Wolcott, Patten & Bennett, of Boston, Mass., on the brief), for Charles Wesley Purdy.

Before BINGHAM and WILSON, Circuit Judges, and SWEENEY, District Judge.

SWEENEY, District Judge.

This is a petition to review a decision of the Board of Tax Appeals of November 26, 1937 (36 B.T.A. 572), in which it was determined that a deficiency existed in the income tax of this respondent for the year 1932 in the amount of $233.09.

The question before the court is whether a gain from the sale by the taxpayer of 1,100 shares of General Electric Company stock was a capital gain which could not be used to offset a loss from the sale of other securities held less than two years.

The Board found as facts that the respondent, during 1932, was engaged in the business of buying and selling stocks and bonds on his own account, primarily for the

tric stock "primarily for sale in the course of his trade or business." Section 101(c)(8). The only question argued before us was that there was no evidence to support the finding. There is no assignment of error presenting this question, as required by the rules of this court. See Rule 41 of our present Rules and Rule 36 of our prior Rules. This question is therefore not before us; but assuming that it is, we think there is ample evidence to support the finding.

The finding by the Board that the General Electric stock was held primarily for sale in the course of his trade or business was fully justified. The facts to which the respondent points, standing alone and unexplained, might be deemed to be inconsistent with such a course. In the light of all of the evidence before the Board the inconsistency disappears. That the stock was pledged for a loan on his home, or that a part of it was stored in a strong box in which it remained until sold, amounts to no more than an indication that the stock was fully paid for, and that, having in mind his promise to his mother, he did not intend to commingle his securities, and jeopardize the General Electric stock by association with his margin account stocks. That he actually had the two certificates follows naturally from the method of acquisition and from the conditions under which he held them. That the stock was never pledged on his margin accounts indicates that, in addition to his intent to keep his promise to his mother, he did not need it on his margin accounts.

It thus appears that there was evidence legally sufficient to support the Board's finding.

The decision of the Board of Tax Appeals is affirmed.